﻿Citation Nr: 19172656
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 19-19 432
DATE: September 19, 2019

ORDER

Entitlement to service connection for a bilateral hearing loss disability is denied.

Entitlement to service connection for tinnitus is denied.

Entitlement to service connection for loss of sense of smell, to include as due to an undiagnosed illness is denied.

REMANDED

Entitlement to service connection for an acquired psychiatric disability, to include insomnia disorder and anxiety disorder, claimed as memory loss, panic attacks and sleep disturbance is remanded.

FINDINGS OF FACT

1. The Veteran does not have bilateral hearing loss considered to be a disability for VA purposes.

2. The preponderance of the evidence is against finding that tinnitus began during active service or is otherwise related to an in-service injury or disease.

3. Hyposmia (loss of sense of smell) is attributable to a clinical diagnosis with a clear and specific etiology.

4. Hyposmia was not incurred in service, and is not attributable to any in-service event, injury or disease.

CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral hearing loss disability have not been met. 38 U.S.C. § §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. § § 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for service connection for a tinnitus have not been met. 38 U.S.C. § §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. § § 3.102, 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for hyposmia, to include as due to an undiagnosed illness or a medically unexplained chronic multi-symptom illness as a result of Persian Gulf War service, are not met. 38 U.S.C. § §§ 1101, 1110, 1113, 1117, 5107; 38 C.F.R. § § 3.102, 3.303, 3.317.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In opening, the Board notes that it has re-characterized the claim for service connection of insomnia disorder, claimed as memory loss, panic attacks and sleep disturbance, to include an assessment of anxiety. Anxiety was assessed during October 1995 VA examination, and was not the subject of a December 1995 rating decision denying entitlement to service connection for posttraumatic stress disorder (PTSD). See Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008); Clemons v. Shinseki, 23 Vet. App. 1 (2009).

Service Connection

1. Entitlement to service connection for a bilateral hearing loss disability.

The Veteran filed his claim for service connection of a bilateral hearing loss disability in April 2017. In June 2017 he was afforded a VA audiological examination. At that time, pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 15 20 15 15

LEFT 15 10 20 20 15

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and of 100 percent in the left ear.

Entitlement to service connection for a bilateral hearing loss disability is not established. The Board acknowledges the Veteran’s complaints regarding having hearing difficulties, which he is certainly competent to relate. See e.g., Layno v. Brown, 6 Vet. App. 465 (1994); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). Nevertheless, it is clear that the diagnosis of bilateral hearing loss is not capable of lay observation, as it requires audiometric test findings. In the present case, the audiometric test results do not meet VA’s threshold for considering hearing loss a disability for VA purposes. See 38 C.F.R. § 3.385. Other than the VA examination, no evidence pertinent to a bilateral hearing loss disability indicates that the Veteran had a bilateral hearing disability during the course of the present claim. See McLain v. Nicholson, 21 Vet. App. 319, 321 (2007) (the current disability requirement is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim). 

In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, the claim must be denied.

2. Entitlement to service connection for tinnitus.

The Veteran contends that he has tinnitus attributable to service. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a diagnosis of tinnitus, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 

The June 2017 VA examiner opined that the Veteran’s tinnitus was less likely than not related to an in-service injury, event, or disease. The examiner explained that in most cases noise-induced tinnitus was accompanied by a contemporaneous loss of hearing, which had not occurred in the Veteran’s case. Notably, the examination report reflects the Veteran could not point to any specific date of onset of his tinnitus, including the date of any acoustic trauma, and the examiner also considered this as a factor in offering their opinion. 

While the Veteran believes his tinnitus is related to service, the Board reiterates that the preponderance of the evidence weighs against findings that acoustic trauma or any other event, injury or disease occurred. The Veteran is competent to relate his observations of this disability; however, he has offered no evidence regarding the onset thereof. Accordingly, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

3. Entitlement to service connection for loss of sense of smell, to include as due to an undiagnosed illness.

The Veteran had active duty service from in the Southwest Asia theater of operations from November 1990 through April 1991.

In general, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § § 1110; 38 C.F.R. § 3.303 (a). Service connection requires evidence showing the following elements: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

Even in instances where the record does not contain affirmative evidence of the occurrence of a disease or injury during service, service connection may still be granted if all of the evidence, including that pertinent to service, establishes that the disability was incurred during service. See 38 U.S.C. § § 1113 (b); 38 C.F.R. § 3.303 (d); Cosman v. Principi, 3 Vet. App. 503, 505 (1992).

Service connection may also be granted for a disease that was first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred during service. 38 C.F.R. § 3.303 (d).

As noted above, the Veteran has had documented service in the Southwest Asia theater of operations. Special provisions are in place for claims which relate to service connection for certain disabilities sustained as a result of service in Southwest Asia. Under 38 C.F.R. § 3.317, service connection may be warranted for a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval or air service in the Southwest Asia Theater of operations during the Persian Gulf War. For disability due to undiagnosed illness and medically unexplained chronic multi symptom illness, the disability must have been manifest either during active military service in the Southwest Asia Theater of operations or to a degree of 10 percent or more thereafter.

38 C.F.R. § 3.317 recognizes three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi-symptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117 (d) warrants a presumption of service connection.

An undiagnosed illness is defined as a condition that by history, physical examination and laboratory tests cannot be attributed to a known clinical diagnosis. In the case of claims based on undiagnosed illness under 38 C.F.R. § 3.317, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Further, lay persons are competent to report objective signs of illness. Id. In order to determine whether the undiagnosed illness is manifested to a degree of 10 percent or more the condition must be rated by analogy to a disease or injury in which the functions affected, anatomical location or symptomatology are similar. See 38 C.F. R. § 3.317(a)(5) (2017); see also Stankevich v. Nicholson, 19 Vet. App. 470 (2006).

A medically unexplained chronic multi-symptom illness is one defined by a cluster of signs or symptoms and specifically includes chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders (excluding structural gastrointestinal diseases), as well as any other illness that the Secretary determines meets the criteria in paragraph (a)(2)(ii) of this section for a medically unexplained chronic multi-symptom illness. A medically unexplained chronic multi-symptom illness means a diagnosed illness without conclusive pathophysiology or etiology that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi-symptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317 (a)(2)(ii) (2017).

Objective indications of chronic disability include both signs, in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317 (a)(3). Signs or symptoms that may be manifestations of undiagnosed illness or medically unexplained chronic multi-symptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317 (b).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or alternatively, whether a preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § § 5107(b).

Initially, the Board notes that entitlement to service connection for loss of smell as an undiagnosed illness is not warranted. The Veteran was afforded a VA examination in September 2017, resulting in an assessment of hyposmia (loss of sense of smell) due to mucosal thickening of the sinuses. A clinical diagnosis with a known etiology has been assessed, and there is no undiagnosed illness. 

Entitlement to service connection for loss of sense of smell is not warranted as due to an undiagnosed illness or a medically unexplained chronic multi-symptom illness. As noted above, hyposmia was assessed by a VA examiner in September 2017, with the examiner noting that the Veteran had reported exposure to burn pits, oil well fires and sand particulates during his service in Southwest Asia (SWA). Following a CT scan of the sinuses, the examiner identified mucosal thickening of the sinuses as the anatomical/pathological basis for the assessed hyposmia and concluded that the disorder was less likely than not incurred in, or attributable to, service. The examiner reasoned that the Veteran had endorsed loss of smell with an onset of 15 to 20 years following service, and that the history, including the service records, did not suggest sinus problems in service. The examiner did not attribute the disorder to the Veteran’s reported exposures in SWA. The Board’s review of the record documents no indication of loss of smell prior to the September 2017 VA examination, and there is no otherwise competent evidence attributing the disorder to service. Accordingly, the claim is denied. Gilbert, supra.

While the Veteran believes his hyposmia is attributable to service, he is not competent to provide a medical opinion in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

REASONS FOR REMAND

1. Entitlement to service connection for an acquired psychiatric disability, to include insomnia disorder and anxiety disorder, claimed as memory loss, panic attacks and sleep disturbance is remanded.

The Veteran seeks entitlement to an acquired psychiatric disability, to include insomnia disorder and anxiety disorder, claimed as memory loss, panic attacks and sleep disturbance. He was afforded a VA examination in July 2017 in furtherance of substantiating the claim, which resulted in a negative opinion. 

Once VA provides an examination, it must be adequate, or VA must notify the Veteran why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). An examination is adequate if it considers the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one. Barr, 21 Vet. App. at 311 (quoting Green v. Derwinski, 1 Vet. App. 121, 124 (1991)). Moreover, an examination must be based upon consideration of the Veteran’s prior medical history and examinations. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). The Secretary has an affirmative duty to gather the evidence necessary to render an informed decision on a claim. Douglas v. Shinseki, 23 Vet. App. 19 (2009).

The July 2017 opinion is inadequate. In rendering the opinion, the examiner cited to an October1995 report of VA examination, but did not discuss it. That examination report reflects an assessment of anxiety disorder, not otherwise specified, with PTSD symptoms, and reflects the Veteran’s lay report of difficulty of sleeping in and since service. The Veteran offered a similar history of sleep disturbance, as well, which the examiner failed to address. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). An examination must be based upon an adequate history. Stefl, supra. Accordingly, the examination report is returned. 38 C.F.R. § 4.2.

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination for the purpose of ascertaining the, presence, nature and likely etiology of any acquired psychiatric disability, to include insomnia disorder and anxiety disorder. The examiner should obtain a complete, pertinent history from the Veteran and review the claims file in conjunction with the examination, giving particular attention to the service treatment records, lay assertions, and the pertinent medical evidence. The examiner is also requested to discuss the October 1995 report of VA examination which reflects an assessment of anxiety disorder, not otherwise specified, with PTSD symptoms, as well as the Veteran’s lay report of difficulty of sleeping in and since service. The examination report should note that the claims file was reviewed.

Based upon the examination and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (a 50 percent probability or greater) that any acquired psychiatric disability, to include insomnia disorder and anxiety disorder, is attributable to service.

Any and all opinions must be accompanied by a complete rationale. If the examiner is unable to reach an opinion without resort to speculation, he or she should explain the reasons for this inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion.

The examiner is informed that the term at least as likely as not does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is as medically sound to find in favor of such a conclusion as it is to find against it.

 

 

C. TRUEBA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Joseph R. Keselyak

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.